Mr. Chief Justice Alvey
delivered the opinion of the Court:
The appeal in this case is from a decision of the Commissioner of Patents in a matter of interference declared as between an application for a patent filed by Frederick M. Locke, the appellant, and a patent issued to John W. Boch, *76 the appellee, in respect of claims of invention for improvements in porcelain or earthen-ware insulators and the mode of manufacturing thereof.
It appears that, on the 23d of October, 1897, an application was filed for patent by John W. Boch, for an alleged invention by him of improvements in porcelain or earthenware insulators and the mode of manufacturing the same, according to specification and claim accompanying the petition. In due course of proceeding, on the 8th day of March, 1898, a patent was issued on this application to Boch for the alleged invention as claimed, the patent being No. 600,475. The claim for which the patent issued is as follows:
“ 1. The mode herein described of making the petticoat-insulator by molding it in two or more parts of clay, coating them with glazing material, fitting them together, supplying extra glazing material at the joints between the petticoats and firing the united and coated parts with the petticoats uppermost, so that the glazing material will be melted and flow into and fill all the spaces between the parts, substantially as described.
“ 2. The mode herein described of making a petticoat-insulator, by molding it in two or more parts of clay, fitting them together, supplying glazing material at the joints between the petticoats, and then firing with the petticoats uppermost, whereby the clay will become vitrified, and at the same operation the glazing material will be melted and flow into and fill the spaces between the parts, substantially as described.
' “3. The mode herein described of making a petticoat-insulator, by molding it in two or more parts of clay, biscuit-firing the parts separately, fitting them together, supplying glazing material at the joints between the petticoats, and firing, with the petticoats uppermost, so that the glazing material will be melted and flow into and fill all the spaces between the parts, substantially as described.
*77 “ 4. As a new article of manufacture, a porcelain or earthenware insulator made of two or more parts fitted one within the other with extra glaze introduced to fill all the spaces where the parts are to be united and forming an intermediate solid layer or layers of glaze between the conductor and pin, substantially as described.”
Subsequently, that is to say, on the 22d day of March, 1898, an application was filed by Frederick M. Locke for a patent for the same invention of that for which the patent had issued to Boch; the specifications, drawings and claims filed with this latter application being an exact copy of those issued with and attached to the patent to Boch.
Such being the condition of proceedings in the Patent Office, an interference was declared as between the alleged prior invention of Locke and the invention covered by the patent to Boch. The issue was defined and declared in four counts, and in the exact terms of the respective claims set forth by both Boch and Locke,as we have just recited them. The first three of which define the method of making the insulator of the issue of interference, and the fourth defines, as a new article of manufacture, the insulator produced by the method described. The serial number of this interference is 19,468. But there was a prior interference as between applications of these parties, being serial No. 18,969, in which the issue was as for “ an insulator formed of two or more shells of suitable insulating material, and which are secured together by inserting one into the other, and then fusing them so as to form practically but a single piece.”
It was in respect to this issue in No. 18,969, that the greater part of the evidence in the present record was taken. That interference, No. 18,969, as we gather from the statement of the parties, was dissolved by the Commissioner of Patents, and it, therefore, presents no question on this appeal. Upon the dissolution of that interference, it was stipulated between the parties “that all the testimony and exhibits of *78 either party in interference No. 18,969, might be used, so far as applicable, as testimony and exhibits in this interference, No. 19,468, unless counsel for the. respective parties shall agree to omit parts thereof.”
In the present interference, Boch is entitled to the position of senior party upon the record, and the burden of proof is upon Locke to show the fact of priority of invention of the subject-matter of the interference, clearly and beyond all reasonable doubt, to enable him to overcome the effect of the patent to Boch.
In his preliminary statement, Boch states that he conceived the invention of the issue in or about the month of July or August, 1896, and that he explained it to others at that time. That he made illustrative drawings in April or May, 1897, and insulators of the construction described were made early in July, 1897.
Locke, in his preliminary statement, says, that he conceived the invention set forth in the several issues of the interference in September, 1892, and that, at the same time, he fully explained and described the invention to others, and immediately thereafter, and as soon as it could be done, he made a full-sized working model, and that the same was successfully operated at Victor, N. Y.; and 'that, at the same time, this model was shown and explained to others, and that it is still in his possession. That he made no drawings or skétches which show the issue herein ; but that he commenced to place insulators upon the market embodying the issue herein in September and October, 1896, and since that time many thousands have been placed upon the market and put into use.
The record in this case.is quite voluminous, but only a comparatively small part of the testimony, documentary evidence and exhibits therein contained really apply to issues of this case. Indeed, that portion of the evidence, that is to say, the testimony of witnesses, that appears to be relevant, is of such conflicting and doubtful character as to *79 make it impossible to base any satisfactory conclusion thereon. Each party charges the other with flagrant attempts to sustain his case by the 'most unmitigated falsehood and perjury. If there be ground for the gross imputation that we find mutually cast upon parties and witnesses in the briefs of counsel, we should best dispose of the case’ by holding that neither party had, by satisfactory evidence, succeeded in showing that he is entitled to what is defined as the invention by the issues of interference. This, however, can not be done as the case is presented. There has .been a patent issued to Boch, and that, as between Boch and Locke, is sufficient to secure to the former the right to the invention until overcome or superseded by clear and unquestionable evidence that the right belongs to Locke, by virtue of priority of invention. If, therefore, Locke can not show, beyond reasonable doubt, that he made the invention, and that, too, prior to the date of the application by Boch, he certainly, as between himself and Boch, is not entitled to be declared the prior inventor, whatever may be thought of the evidence produced on the part of Boch as to the date of the invention patented to him. ‘
Upon the evidence introduced into the case by stipulation, the question of the rights of the parties was very fully considered by the tribunals of the Patent Office. The examiner of interferences, having passed upon the evidence in the preceding interference, No. 18,969, and concluded in that case that Locke was entitled to priority of invention, adhered to that opinion in this case, though he did not examine the evidence as applied to the issues of this case, by any special analysis of the facts. Upon appeal to the examiners in chief by Boch, the decision of the examiner of interferences was reversed by a unanimous decision of the board; and upon full examination of the evidence the board concluded that the right of priority was with Boch. In view of all the evidence they said: “Boch may or may not be entitled to the patent which he now holds, but, as *80 between him and Locke, he is, in our opinion, first, and, of the two, the only one to make the invention of this interference.”
On appeal by Locke to the Commissioner of Patents, the latter, upon full review of the evidence, affirmed the decision of the examiners in chief; and in the conclusion of his opinion said:
“Locke has signally failed to sustain the burden upon him to overcome Boch’s patent. I do not find that Locke is an inventor of the subject-matter of the issue at all, and I fully agree with the conclusion of the examiners in chief that, as between Boch and Locke, Boch is the first and only inventor who made the invention covered by the issue of this interference.”
This court is not called upon to go the length that the Commissioner has gone, and declare that Locke did not invent the subject-matter of the interference at all; the question on this appeal being one of priority of invention only. Locke alleges in his preliminary statement that he conceived the invention of the issues of the interference in September, 1892, and that he fully explained and described the same to others at the time, and that he immediately thereafter made a full-sized working model, and successfully operated the same at Victor, N. Y. We do not find that these allegations have been sustained by him. The testimony that he offers to support these allegations is so completely discredited by direct conflict with the testimony of other witnesses, and by the circumstances of the case, that no safe conclusion can be based thereon. Locke undertook to prove, by his witness Lapp, that the insulator of the interference, claimed to have been made by him in September, 1892, was in fact made in August or September of that year. But on further examination of the witness by Boch, he was asked this question : “11 Q. In your former deposition you stated that a certain small insulator which was broken in Mr. Denison’s office in your presence, and which was offered as an exhibit, ‘Locke’s *81 Exhibit Locke’s Two-Shell Insulator, 1892,’ was made in August or September, 1892; was that the truth? Ans. I believe it was.” That answer was followed with the following question: “12 Ques. Now, isn’t it the fact, Mr. Lapp, that that specific insulator was made in the latter part of 1897 or the spring of 1898? Ans. I do not know.”
Lapp was the only witness examined by Locke to corroborate his own statement as to the time of making the model or insulator in question, or that it was made in 1892; and apart from the statement of Locke and the testimony of his witness Lapp, there is no evidence as to when it was in fact made. Indeed, the evidence would seem to show it to be quite improbable that the insulator was made in 1892. For after the alleged time of making the insulator of this interference, Locke was before the Patent Office with applications for patents for insulators, and yet nothing was disclosed in regard to this particular insulator of 1892, which he says he not only then invented, but he then made and successfully operated. It is but reasonable to suppose that if Locke had in his possession this valuable improvement in insulators during the time he alleges he had, he would have applied for a patent therefor, as he did for several other inventions of the kind, and not held-this particular invention unprotected for more than five and a half years before making application for a patent, and not making the application for the patent until after another person had applied for and obtained a patent for a similar invention. It is, moreover, natural to presume that, having made a successful working model of the invention as he has stated, he would have produced and shown it to the people of the Westinghouse Company when he went to see them upon the subject of insulators in August, 1896, or he would have shown it to his patent attorney earlier than he did. But he made no such disclosure of what he has since claimed as his invention.
In the testimony of Locke he states that he went to *82 Pittsburg to see the Westinghouse Electric and Manufacturing Company, on August 21,1896, and that he took with him a blue-print of his two-shell insulator, which, as he says, was made from one of the drawings that had been made August 10, 1896. This .blue-print was shown to the general manager of the company, and to Mr. Skinner, the electrical engineer of the companj’-, and they looked it over very closely, asking how it was made; and when he described it to them, he says, the general manager exclaimed, “I declare, he has got it.5’
He says this remark was made in reference to an insulator made of two or more shells, and nested together in such a way that when fused they would form a single piece. After this, that is to say, on the 10th of October, 1896, Locke wrote to the Westinghouse Company that he had sent it by express three samples of his combination porcelain and glass insulators. And when Mr. Skinner was examined with reference to the interview referred to by Locke, he says: “I recall the fact that Mr. Locke came to the works in the summer of 1896, and explained to me his scheme of marking an insulator in two parts, one part of glass and the other of porcelain cemented together. I do not recall any statement made by me at that time as to making an insulator in two parts, each consisting of porcelain and cemented together with a glaze, or fused together. Mr. Locke did mention a cement consisting of either paraffine and spar, or paraffine and sulphur. I recall this matter particularly on account of the theory advanced by Mr. Locke that mixing a large proportion of spar with the paraffine would raise the melting-point of the combination.”
It is very manifest from this evidence that, in the interview with the manager and Mr. Skinner at the Westinghouse works in August of 1896, Locke referred alone to his proposed insulator composed of two parts, one of porcelain and the other of glass, and that he did not refer at all to the insulator described in the issue of this interference. *83 And that being so, it is certainly remarkable, if the insulator of the present issue had been before that time invented and a completed model thereof made and put into practical operation, as alleged by Locke, that he should have omitted all reference thereto. Indeed, the omission gives rise to but one inference, and that is, that the invention as represented by Locke did not then exist; though he may have been experimenting at the time with the two-shell porcelain parts and the method of cementing or fusing them together; and that fact would seem to be indicated by the terms of the letter to the Westinghouse Electric Company, of October 14, 1896.
In addition to the facts and circumstances to which we have referred, there are many other circumstances in evidence that tend strongly to negative the allegation that the insulator of the issue of this interference was invented and made by Locke in 1892. But it is unnecessary to refer to such additional facts and circumstances specifically, as the presumption founded upon the patent held b.y Boch greatly more than counterbalances all the evidence produced by Locke.
To avoid issuing patents for the same or similar inventions to different persons, and thus preventing injury to patentees and to the public, the interference proceeding has been carefully provided for by statute as a preliminary proceeding ; and in trying the question of anticipation or priority of invention, on an issue of interference, where the supposed interference of an application is with an unexpired patent, the principle to be applied is substantially analogous to that which is applicable in a case of infringement, where the defense is that the patentee is not the original and first inventor, or that the claim of invention had been in public use for more than two years. In all such cases, it is a fundamental principle of the patent law, that, to invalidate or supersede a patent by prior invention or use, the proof must establish the fact beyond reasonable doubt. “ The burden *84 of proof rests upon him (the defendant), and every reasonable doubt should be resolved against him.” Coffin v. Ogden, 18 Wall. 120, 124.
The principle, and the force of its application, as against conflicting and questionable evidence, are very fully and clearly stated by Mr. Justice Brown, in the case of The Barbed Wire Patent, 143 U. S. 275, 284. That was a case of infringement, and the defense was that the invention covered by the patent had been anticipated by certain unpatented devices that had been in public use for such time as to preclude the right of the patentee. The court said :
“We have now to deal with certain unpatented devices, claimed to be complete anticipations of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistake, their proneness to recollect things as the part}' calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be dear, satisfactory and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton-gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny.”
The court then cites with approval the principle laid *85 down in the case of Coffin v. Ogden, to which we have already referred.
It follows from what we have said that, in our opinion, the decision of the Commissioner of Patents ought to be affirmed, and it is so ordered. And the proceedings and decision of this court are hereby directed to be certified to the Commissioner of Patents to be entered of record as provided by law.

Decision of Commissioner of Patents affirmed, and decision of this court directed to he certified, etc.